

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1889-11

**DAVID LEN MOULTON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### CASS COUNTY

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and KEASLER, HERVEY, and COCHRAN, JJ., joined. KELLER, P.J., and COCHRAN, J., filed concurring opinions. WOMACK, J., concurred. ALCALA, J., filed a dissenting opinion in which PRICE and JOHNSON, JJ., joined.

### OPINION

Appellant was convicted of murder and sentenced to sixty years in prison. Finding that Appellant suffered "some harm" by the erroneous submission of the "by manner and means unknown" jury charge, the Sixth Court of Appeals reversed the judgment of the

trial court and remanded for further proceedings.[1] The State filed a petition for discretionary review, which we granted on four grounds:

(1) Did Appellant's objection to all three manners and means on the basis that cause of death was not established preserve a complaint about the submission of the unknown means of asphyxiation on grounds consistent with *Sanchez*?

(2) Is Appellant barred from complaining about alleged *Sanchez* error that results from his strategic decisions?

(3) Does the reasoning of *Sanchez* apply outside the narrow confines of that case, i.e., a sealed crime scene with the suspect inside, combined with testimony expressly limiting the manner and means of the cause of death?

(4) Did Appellant suffer actual harm, egregious or otherwise, from submission of an unknown manner an means of asphyxiation?

We now reverse the judgment of the court of appeals in light of our recent opinion on motion for rehearing in *Sanchez v. State*.[2]

## BACKGROUND

### *Summary of Facts*

Appellant called 911 and explained that he had found his wife Rebecca floating, face down and unresponsive, in the middle of their pond. Emergency personnel responded to the call and attempted to revive Rebecca, but she was pronounced dead at the hospital. Hospital records listed the mechanism of injury as "drowning."

---

[1] *Moulton v. State*, 360 S.W.3d 540, 567 (Tex. App.—Texarkana 2011, pet. granted).

[2] *Sanchez v. State*, 376 S.W.3d 767 (Tex. Crim. App. 2012).

At trial, evidence was introduced that indicated a possible history of domestic violence in the marriage, that Appellant's defense that he had left the house and been gone for around forty minutes during the time of Rebecca's death was questionable, and that Rebecca hated the pond, and would not have gone into the heavily wooded area alone wearing flip-flops.  A detective who was called to the scene and examined the pond explained that "there was no impression or anything where someone might have taken a fall into the pond" and to him it did not appear as if Rebecca had just fallen in.

***Indictment***

Appellant was indicted for murder.  In a three-paragraph indictment, the State alleged Appellant did then and there:

> (1) knowingly or intentionally cause the death of [the victim] by manual strangulation by holding her neck with his hand in a manner that would cause death by asphyxiation;

> (2) knowingly or intentionally cause the death of [the victim] by drowning [the victim] in a pond; and

> (3) knowingly or intentionally cause the death of [the victim] by asphyxiation by means unknown to the grand jury.

***Evidence of Manner and Means***

The medical examiner explained that in eighty-five percent of manual strangulation cases, petechiae—small red or purple spots caused by a hemorrhage—are present in the eye.  The medical examiner did not find petechiae in Rebecca's eye, but there was some sign of injury close to the collarbone–a "3/16-inch angulated red mark," a

puncture of the skin in that area and a 1-inch area of "soft tissue hemorrhage" just below the puncture. She had another hemorrhage on the right side of her neck, but there were no bruises or abrasions on her neck area, and there was no way to determine whether the red mark occurred before or after her death. Appellant testified that the paramedics dropped Rebecca multiple times when they were loading her onto the gurney and that they placed a C collar on her neck which caused the red mark. However, the paramedics testified that Rebecca was never dropped from the gurney and that they did not place a C collar on her neck. Additionally, there were no signs of a struggle, which would normally be found when examining a healthy adult who has been strangled. Some sort of asphyxia was suspected because her lungs had "froth in large airways" containing "edema, intra-alveolar hemorrhage and aspirated food." However, asphyxia was not listed as the cause of death because the noted symptoms of asphyxia could have been the result of the resuscitation efforts.

The autopsy report concluded that Rebecca had died as a result of "undetermined causes." The comment section of the report stated: "Based on investigation and injuries found at autopsy, this case is suspicious for homicide." However, at trial it was discovered that this statement was based on a report that contained inaccurate statements. Over a year after the original autopsy report was completed, it was amended to list "homicidal violence" as the cause of death based on newly submitted affidavits from multiple people that detailed the rocky relationship between Appellant and Rebecca and

her dislike of the woods.

The medical examiner testified at trial that the cause of death was "some sort of asphyxia. Could be drowning, could be strangulation, could be suffocation. We can't specifically pick which one, because when you deal with an asphyxial type of death, the findings are very subtle."

### Jury Charge

The jury was charged in the disjunctive, with the same three alternative methods of murder that were alleged in the indictment. The jury was also instructed that it did not have to agree on whether the death was caused by strangulation, drowning, or asphyxiation by manner and means unknown, but was required to unanimously agree that Appellant intentionally or knowingly caused the death.

Defense counsel objected, saying, "on cause of death, which must be proved in every murder case, the evidence concerning cause of death must come from a qualified medical expert. One expert testified that it was undetermined. Another expert testified to homicidal violence per the autopsy. Therefore, there is no credible cause of death evidence concerning strangulation, drowning, or asphyxiation by an unknown means." The court overruled the objection.

The jury found Appellant guilty and sentenced him to sixty years in prison.

### Court of Appeals

On appeal to the Sixth Court of Appeals, Appellant again complained about the

submission of the "by manner and means unknown" jury charge. The court of appeals

agreed that the charge was erroneous based on "a history of caselaw" involving such

allegations.[3] The court relied on cases such as *Corbett v. State*,[4] *Hicks v. State*,[5] *Rosales*

*v. State*,[6] and our 2010 decision in S*anchez v. State*[7] and concluded that the proper

analysis is to ask whether the manner and means "were truly unknown or whether specific

acts were shown to constitute the manner and means of the commission of the offense."[8]

Applying *Sanchez*, the court agreed that the charge here was erroneous because, like

*Sanchez*, here "there was a known choice of several options" that should have been

submitted to the jury "because the manner and means was not entirely unknown."[9] The

court reasoned that the medical cause of death was asphyxia and that what caused the

---

[3]*Moulton*, 360 S.W.3d at 554.

[4]493 S.W.2d 940 (Tex. Crim. App. 1973) (requiring the State to prove the elements contained as alleged in the indictment).

[5]860 S.W.2d 419, 424 (Tex. Crim. App. 1993) (requiring the State to prove that the grand jury exercised due diligence, but was unable to decipher the means of committing the offense).

[6]4 S.W.3d 228 (Tex. Crim. App. 1999) (overruling *Hicks* and holding that the due-diligence requirement was met when a member of the grand jury testified that the jury was unable to determine the manner and means).

[7]PD–0961–07, 2010 WL 3894640, 2010 Tex. Crim. App. LEXIS 1242 (Tex. Crim. App. Oct. 6, 2010).

[8]*Moulton*, 360 S.W.3d at 556.

[9]*Id.* at 559.

asphyxia was at issue.[10]  Therefore the jury charge should have been amended to remove

the submission of "manner and means unknown," and should have instead, simply given

the jury the multiple causes of asphyxia that were presented by the evidence.[11]  The court

then reviewed the case for egregious harm and concluded that Appellant suffered "some

harm" by the error.[12]

## ARGUMENTS OF THE PARTIES

### *The State's Arguments*

In its first ground for review, the State argues that Appellant's objection at trial

was inadequate to preserve error.  The State posits that Appellant's objection that there

was no evidence supporting any manner and means was essentially a motion for a

directed verdict.  In *Sanchez*, the appellant specifically complained about the portion of

the charge regarding the manner and means being unknown to the grand jury.  Here,

Appellant objected to the entire charge and was not specific.  Because of this, the State

argues that, even if the charge was erroneous it should have been reviewed for egregious

harm instead of some harm.

The State further argues that Appellant's objection was not only inadequate to

warrant a some-harm review, but also that, based on *Sanchez*, it was so insufficient that it

---

[10]*Id.* at 558–59.

[11]*Id.* at 559.

[12]*Id.* at 563.

did not preserve charge error at all. The State explains that Appellant's objection to the jury charge was too late to preserve his complaint because *Sanchez* requires that a defendant object to the lack of notice before trial or during trial.[13] The State also argues that Appellant's argument at trial—that there was no evidence on cause of death—was inconsistent with his argument on appeal when he claimed that there was sufficient evidence to preclude an "unknown" charge. The State uses our opinion in *Tolbert v. State*[14] for support and concludes that Appellant's "all or nothing" strategy means that there is no jury-charge error at all.

In its third ground for review, the State points out that, unlike *Sanchez*, the record in this case demonstrates that all of the evidence that could have been presented at trial was neither ascertained nor presented. For example, in *Sanchez*, the victim and the suspect were found in a sealed hotel room by the police, but here (according to Appellant), the victim was found floating in a pond. It was not known if the victim suffered the fatal trauma in the pond or somewhere else, and it was not clear that she had drowned because she was found floating and not submerged. The State argues that this list of possible manner and means is so broad as to be tantamount to an unknown manner

---

[13]*See Sanchez*, 2010 Tex. Crim. App. LEXIS 1242 at *17–18 (explaining that "[w]here the State has alleged "unknown" manner and means in the indictment or jury charge, the defendant may challenge the propriety of the "unknown" allegation before trial and (if the evidence at trial has made a second inquiry necessary) at the conclusion of the evidence, but before the charge is submitted to the jury.")

[14]306 S.W.3d 776, 778–79 (Tex. Crim. App. 2010).

and means allegation. Finally, in its fourth ground for review, the State asserts that based on the state of the evidence, the court of appeals should have concluded that the "unknown manner and means" instruction was warranted, not that it was harmful error.

***Appellant's Arguments***

Appellant argues that his pretrial objections to the indictment and later objections to the jury charge were sufficient to preserve error and cites our decision in *Tucker v. State*, in which we explained the general prerequisite to preserve a complaint for appellate review. Appellant asserts that it is clear that he met this prerequisite and objected with enough specificity to later argue that the jury was erroneously charged based on the *Sanchez* rationale. Appellant emphasizes that Texas courts have recognized the "difficulty of formulating the proper objection when faced with an unusual type of evidence"[15] and argues that this should be recognized as such a case.

Additionally, Appellant explains that as evidence was introduced at trial, it became apparent that the submission of all three allegations was inappropriate and claims to have made a clear, pretrial objection to the manner and means unknown allegation. Appellant contends that the State's speculation as to Appellant's trial strategy does not render *Sanchez* inapplicable. Appellant explains that *Sanchez* provides no indication as to what objections were made by the appellant in that case and that the variance between the allegations in the indictment and proof in this case created a unique situation that was not

---

[15]*Woods v. State*, 13 S.W.3d 100, 105 (Tex. App.—Texarkana 2010, pet. ref'd).

addressed in *Sanchez*. More specifically, Appellant argues that the evidence was insufficient to convict him on either of the two "known" allegations, while the medical expert's testimony precluded the submission of the "unknown" allegation. Appellant argues that this situation differs from *Sanchez* and because of this, his trial strategy should have no bearing on the outcome of the case.

In response to the third and fourth grounds for review, Appellant asserts that the reasoning of *Sanchez* does apply outside the narrow confines of the case and that the court of appeals correctly determined that he suffered some harm from the erroneous jury charge. Appellant argues that in *Sanchez*, the evidence in support of the conviction was overwhelming, but the testimony as to manner and means was not. Appellant further explains that the court of appeals engaged in the same inquiry as our Court in *Sanchez* and concludes that once the erroneous charge was removed, the evidence was insufficient to convict on other theories.

## APPLICABLE LAW

Because we had not yet handed down our opinion on motion for rehearing in *Sanchez*, the court of appeals and the parties in this case relied on our original *Sanchez* opinion. Therefore, we will begin with a summary of our *Sanchez* opinion on motion for rehearing.

In *Sanchez*, two guests in a motel room called the police after hearing a woman screaming in an adjoining room. Upon arrival, the police heard a stun gun go off inside

the room in which the woman had screamed. When the police entered the room, they found the appellant lying next to his dead, naked girlfriend. His girlfriend's face and neck were bruised and there were marks from a stun gun on both her neck and chest. There was only one door to the room, and it had been barricaded. Also all of the windows had been painted shut. At trial, the medical expert listed "asphyxia by strangulation" as the cause of death, but indicated that he was unsure as to whether the cause of asphyxia was strangulation or the stun gun. Similar to this case, the appellant was charged with murder and both the indictment and the jury charge included two known manner and means theories and two unknown manner and means theories. The jury charge allowed the jurors to consider each manner and means in the disjunctive, and appellant was convicted under a "manner and means unknown" theory. The Thirteenth Court of Appeals applied *Hicks v. State*,[16] and reversed for jury-charge error.

In our recent opinion on motion for rehearing, we explained that the *Hicks* rule relied upon by the court of appeals is no longer viable since the adoption of the "hypothetically correct" jury charge in *Malik v. State,*[17] and determined that sufficiency

---

[16]860 S.W.2d 419, 424 (Tex. Crim. App. 1993) (holding that "[w]hen an indictment alleges that the manner or means of inflicting the injury is unknown and the evidence at trial does not establish the type of weapon used, a prima facie showing is made that the weapon was unknown to the grand jury"). The Court further explained that "if the evidence at trial shows what object was used to inflict the injury, then the State must prove that the grand jury used due diligence in attempting to ascertain the weapon used." *Id.*

[17]*See Malik v. State*, 953 S.W.2d. 234, 240 (Tex. Crim. App. 1997) (determining that sufficiency of the evidence should be assessed using the elements of the crime as defined by the hypothetically correct jury charge for the case).

review should be conducted by comparing the evidence to the hypothetically correct jury charge.[18]  We further explained that *Malik* pertains to charge error only in that it might assist the appellate court in determining whether the actual charge was phrased correctly based on its determination of what the hypothetically correct jury charge might be.[19]  We held that it was error to include the unknown manner and means because there was no evidence to support it.[20]  Instead there was a limited list of known alternatives for the manner and means of the cause of death.[21]  Therefore, we concluded that the jury charge should have been reduced to the two known theories that were supported by the evidence at trial.[22]

## ANALYSIS

Because the first and second grounds for review focus on preservation issues, we shall begin with a discussion of Appellant's third ground for review to determine whether there was jury-charge error that needed to be preserved.

In the third ground for review, this Court is asked to determine whether the reasoning of *Sanchez* applies outside the narrow confines of that case.  While Appellant's

---

[18]*Sanchez*, 376 S.W.3d at 772.

[19]*Id.*

[20]*Id.* at 774.

[21]*Id.*

[22]*Id.*

and State's briefs on this issue, as well as the court of appeals's decision were written before our decision on motion for rehearing in *Sanchez* we are still able to conclude that the reasoning from *Sanchez* may apply under different circumstances. However, in this instance, the court of appeals incorrectly held that the manner and means could be determined from a known choice of several options. It is clear that this case is distinguishable from *Sanchez*, in which there was a closed universe of possibilities regarding manner and means. In *Sanchez*, we stated that the court's instructions should be reduced to the theories that are supported by the evidence at trial.[23] In this case, each of the three theories included in the jury charge could be supported by the evidence given by the medical expert at trial. The means unknown theory is supported by the fact that the victim's injuries did not conclusively point to a manner and means of asphyxiation; rather her injuries could have pointed to a variety of possibilities. In *Sanchez*, the victim, the defendant, and a weapon were found in a sealed hotel room directly after the crime. This information led to the court's conclusion that "manner and means unknown" was an inappropriate jury charge because there was a limited list of known alternatives. However, in this case, there is unlimited information that may be unknown, because the crime scene does not point to a conclusive list of possibilities. A limited list of known alternatives does not exist. Therefore, the indictment correctly alleged an unknown manner and means as well as all options supported by the evidence. Also, because

---

[23]*Id.* at 774.

manner and means remained unknown at the conclusion of the evidence, the instruction on unknown manner and means was properly submitted to the jury.

**CONCLUSION**

Because we hold that the trial court did not commit jury-charge error, there is no need to address the first and second grounds for review regarding preservation or the fourth ground for review concerning the harm analysis. We conclude that based on *Sanchez*, the trial court did not err by instructing the jury on the "unknown" manner and means of committing the offense. Therefore, we reverse the judgment of the court of appeals.

Meyers, J.

Delivered: March 6, 2013
Publish