**Affirmed Opinion and Memorandum Opinion filed February 28, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00349-CR

## JOSHUAH MACK, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 300th District Court
Brazoria County, Texas
Trial Court Cause No. 79044-CR**

## M E M O R A N D U M   O P I N I O N

Appellant Joshuah Mack appeals his conviction for intentionally or knowingly causing serious bodily injury to a child. In his sole issue, appellant argues that the trial court reversibly erred in submitting a jury charge containing alternative "unknown manner or means" theories. Concluding the charge was supported by the trial evidence, we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The complainant Kenzayah Washington was fifteen-months old at the time of her death. She was the daughter of appellant's girlfriend, Kourtney Washington.

Appellant and Washington drove to the grocery store with Kenzayah in the back seat in a car seat. Washington went into the store, and when she returned to the car, appellant was in the driver seat cradling Kenzayah, who looked like she had been crying. Appellant told her that the child had been crying and needed a diaper change. Washington took Kenzayah and placed her on the passenger seat and headed back into the store to buy baby wipes. When she returned, her car, appellant (her boyfriend of six months), and her daughter were gone. Washington searched for the car, and a few minutes later appellant drove to the front of the store and picked up Washington.

Kenzayah was back in her car seat and appeared to be sleeping. Appellant drove to a parking lot where Washington planned to change the child's diaper. Washington found her lifeless; Kenzayah did not react, she was having trouble breathing, and appeared to have blood on her nose. Washington asked appellant to drive to the hospital. When he did not do it, Washington asked him a second time and a third time.

Appellant then drove the mother and child to a nearby hospital. Upon arrival, the child had blood around her nose and she was not breathing enough to sustain life. Neither appellant nor Washington provided the emergency room doctors, or any other doctors, with useful information to assist in treatment. Medical personnel placed the child on an oxygen device. Initial diagnostic scans at the emergency room showed that Kenzayah was in respiratory distress, had

suffered pulmonary contusions and brain hemorrhaging, and had elevated enzymes, troponin, and white blood count, symptomatic of trauma.

A few hours later, medical personnel life-flighted Kenzayah to Texas Children's Hospital in the Houston Medical Center. She was kept on a breathing machine at Texas Children's Hospital. Her left ear was lacerated and swollen, she had contusions on her forehead and around both of her ears, and multiple small bruises on the top of her head. In addition to bruises on her lungs, Kenzayah had broken ribs. According to experts, these injuries appeared to be recent. Kenzayah died on January 28, 2016, four days after her admission to the hospital.

*The Indictment*

Appellant was indicted for intentionally or knowingly causing serious bodily injury to a child. In the ten-paragraph indictment, the State alleged "that [appellant]. . . on or about the 24th day of January 2016. . .did then and there intentionally or knowingly cause serious bodily injury to Kenzayah Washington, a child 14 years of age or younger, by. . ."

(1)    "shaking the body of Kenzayah Washington."

(2)    ". . .causing blunt force trauma to the head of Kenzayah Washington the exact manner and means unknown."

(3)    ". . .squeezing the body of Kenzayah Washington."

(4)    ". . .causing the head of Kenzayah Washington to strike an unknown object."

(5)    ". . .causing an unknown object to strike the head of Kenzayah Washington."

(6)    ". . .causing trauma to the head of Kenzayah Washington the exact manner and means unknown."

(7)    ". . .grabbing the body of Kenzayah Washington."

(8)    ". . .compressing the ribs of Kenzayah Washington with the defendant's hands."

3

(9)     ". . .applying physical force to Kenzayah Washington's rib area with the defendant's hand."

(10)    ". . .applying physical force to Kenzayah Washington's rib area the exact manner and means unknown."

*Trial*

Eight medical professionals testified at trial, providing testimony about Kenzayah's injuries as they appeared from the time she was brought into the emergency room, through her four days of care at Texas Children's Hospital, to the post-mortem examination. Many provided opinion testimony as to the cause of the child's injuries.

Video evidence from Pearland Police Department confirmed Washington had left the child alone in the car with appellant.

Appellant did not testify at trial. A police detective presented recordings of four interviews conducted in the days that followed Kenzayah's hospitalization. In his interviews, appellant consistently agreed that he had been alone with Kenzayah while her mother went into the grocery store both times. Appellant's explanation of what occurred during the time appellant was alone with Kenzayah changed in successive interviews. One iteration involves Kenzayah falling against the door frame, another falling against the glove box while he was driving in the parking lot with Kenzayah unrestrained. Appellant also told the investigators that he had squeezed her tightly to his chest to calm her. Medical experts rejected the plausibility of appellant's explanations for Kenzayah's injuries.

*Jury Charge and Verdict*

The trial court charged the jury in the disjunctive, with the same ten alternative methods of causing serious bodily injury that were alleged in the indictment. The trial court instructed the jury on the lesser-included offense of

recklessly causing serious injury to a child. The jury found appellant guilty of intentionally or knowingly causing serious bodily injury to a child and found that appellant used or exhibited a deadly weapon.

## II. ISSUE AND ANALYSIS

In his sole issue on appeal, appellant argues that the trial court erred in submitting multiple instructions that contained the language "exact manner and means unknown." In our review of a jury charge, we first determine whether error occurred. *See Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). Appellant argues that the trial court's ruling runs afoul of the holding in *Sanchez* and *Moulton*, two murder cases involving similar charge language. *Moulton v. State*, 395 S.W.3d 804, 810 (Tex. Crim. App. 2013); *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012).

Like murder, injury to a child is a result-of-conduct offense. *Stuhler v. State*, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007); Tex. Penal Code Ann. § 22.04; *see also Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012). While all elements of an injury-to-a-child offense must be proven beyond a reasonable doubt to convict, the adverbial phrases that describe how the offense occurred, i.e., the manner and means of committing the offense, which generally are introduced by the preposition "by," are not the gravamen of the offense and are not elements on which the jury must be unanimous. *See Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008); *Stuhler*, 218 S.W.3d at 718. Though the jury need not unanimously agree as to the manner and means, the *Sanchez* and *Moulton* cases address potential charge error that a trial court may commit through the improper use of manner-and-means-unknown instructions. *See Moulton*, 395 S.W.3d at 810; *see also Sanchez,* 376 S.W.3d at 774.

In *Sanchez,* the state's medical examiner provided the sole evidence of the

cause of death. *Sanchez*, 376 S.W.3d at 774. He concluded that asphyxia was the cause of death and testified "[w]hether it was caused by strangulation or caused by stun gun I'm not 100 percent sure which one did it but the cause of death is asphyxia." *Id.* The trial court allowed the charge to be submitted with four alternative manner-and-means theories, including one paragraph, "he intentionally or knowingly caused the death of the complainant by manner and means to the Grand Jurors unknown." Finding error in the charge, the intermediate court of appeals reversed the conviction. Although the Court of Criminal Appeals ultimately found no harm, it agreed with the court of appeals's determination that the instructions were erroneous in their inclusion of the unknown manner-and-means theories for the cause of death. *Id.* At trial, there was no evidence presented that appellant intentionally or knowingly caused the death of the complainant by manner and means unknown. *Id.*; *see also Moulton*, 395 S.W.3d at 810. Thus, the *Sanchez* court concluded that the trial court's instructions should have included only theories "with the specified manner and means that were supported by evidence at trial." *Sanchez*, 376 S.W.3d at 774. Critical to the high court's charge-error finding was that the evidence in the record supported only a limited list of known alternatives for the manner and means of the cause of death. *Sanchez*, 376 S.W.3d at 774.

In *Moulton,* a murder case, trial evidence from a medical expert supported each of the three theories included in the jury charge. *Moulton*, 395 S.W.3d at 810. The Court of Criminal Appeals found that the means-unknown theory was supported by evidence that the complainant's injuries did not conclusively point to a manner and means by which the complainant was asphyxiated; rather her injuries pointed to a variety of possibilities. *Id.*

In our review, we presume, without deciding, that the complained-of

6

language — "exact manner and means unknown" — if unsupported by evidence would violate the principles stated in *Sanchez*. *See Sanchez*, 376 S.W.3d at 772.

Appellant argues this case presents error analogous to the charge error in *Sanchez*. Appellant suggests that two of the five physicians who testified on causation matters defined a limited set of conclusive opinions on causation for the case, which were that Kenzayah's injuries were the result of striking or being struck with a hard object (consistent only with paragraphs four and five of the jury charge).

The jury heard evidence to support all ten of the alternative manner and means by which the state alleged appellant intentionally or knowingly caused serious bodily injury to the complainant, including the three challenged that contained the "exact manner and means unknown" language. The second and sixth instructions relate to an intentional serious bodily injury to a child, caused by "blunt force trauma to the head" (in the second paragraph) and simply "trauma to the head" (in the sixth paragraph). Each are followed with the phrase "exact manner and means unknown." Dr. Angela Bachim's testimony about the injuries found on the top of Kenzayah's head illustrates the uncertainty about the manner and means of trauma:

> Q. What about the ones on the top of the head?
>
> A. . . . So, not only it could have been one blunt force traumatic event to the head with multiple hard surfaces hitting, or was she hit multiple times with something that had a small surface making contact with her head. So, the location and pattern of her scalp bruising was very concerning.
>
> Q. You said that pattern could be a result of one small thing multiple times or one thing hitting that had multiple impact points.
>
> A. Yes.
>
> Q. Like a fist?

A. Like knuckles on a fist.

Dr. Bachim did not testify that only a fist could have caused the complainant's head injuries; rather, Dr. Bachim's testimony supports a reasonable inference that the instrumentality that caused the head injuries was unknown.

Experts testified about various areas of head trauma and the trauma around the ribs. At times the experts used the term "blunt force trauma" and at other times they simply said "trauma" or "direct trauma" or "blunt head trauma." The record also shows that it was not clear if there were singular forces causing the injuries or repetitive forces in independent areas of trauma.

The record contains some evidence of spinal cord injury and some experts agreed that Kenzayah could have been shaken. Although no evidence indicates that being shaken alone caused Kenzayah's death, the record contains sufficient evidence that she may have been shaken and expert testimony that being shaken may cause a serious bodily injury. Thus, the first instruction is supported.

Sharon Derrick, Ph.D., forensic anthropologist at the Harris County Institute of Forensic Sciences, testified that the fractures of Kenzayah's ribs likely were caused by "something around the torso." She also further explained how she believed the injury was inflicted, stating:

Q. And that is by squeezing?

A. Yes. Or compression. You know, one thing that I didn't say is you could be compressing the chest and ***doing something like this motion*** because it's not on a surface. So, anytime you're doing -- making a compression of the chest, whether squeezing or ***turning it this direction***, you're still providing those type of forces.[1]

Dr. Derrick's testimony is supportive of known-manner-and-means theories under paragraphs three (squeezing), eight (compressing), and nine (applying

---

[1] (emphasis added).

8

physical force), and the unknown-manner-and-means theory under paragraph ten (that involves either turning the child or a maneuver with *something* around the child's torso).

Because the record contains evidence to support the challenged manner-and-means-unknown paragraphs in the charge, we find no error in the trial court's charge. *See Moulton*, 395 S.W.3d at 810. Accordingly, we overrule appellant's sole issue.

We affirm the judgment.


/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Spain and Poissant.

Do Not Publish — TEX. R. APP. P. 47.2(b).