# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 8, 2011

Lyle W. Cayce
Clerk

No. 10-50450

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

MANUEL JOSEPH BARRAZA, also known as, Manuel Saavedra,

Defendant – Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Manuel Barraza was a state court judge and former criminal defense attorney in El Paso, Texas. A jury found Barraza guilty of two counts of wire fraud and one count of making false statements, stemming from Barraza's use of his position as a state judge to obtain money and sexual favors in exchange for assisting a criminal defendant. He now appeals his conviction and his 60-month concurrent sentences.

I.

This prosecution centers on promises Barraza made to a former client, Diana Rivas Valencia, who was facing drug charges in El Paso. Rivas was arrested in September 2008, and in December, Rivas conveyed to a friend that

she was unhappy with her current attorney and wished to speak with Barraza. Later that day, Barraza went to the jail to visit Rivas. At the time, Barraza had won election to the state bench but had not yet been sworn in. Rivas testified that Barraza promised to help her "get rid of the charges" once he assumed office as a state judge. In exchange, Barraza indicated he wanted money and a "buffet" of women.

By mid-January 2009, the FBI had recruited Rivas's sister, Sarait, and a friend to assist with their investigation. Sarait and an undercover FBI agent, posing as a woman who would provide sexual favors, met with Barraza on January 21. There, Barraza stated that he would try to move Rivas's case to his court and that he wished to replace Rivas's court-appointed attorney with someone he trusted. On January 23, Sarait met Barraza at the courthouse and paid him $1,300. The same day, a transfer order appeared, trying to transfer Rivas's case to Barraza's courtroom, but the court coordinator stopped the transfer after discovering that Barraza had previously represented Rivas.

Despite the failed transfer, Barraza continued seeking money and sex from Rivas's family and friends in exchange for his assistance. In February 2009, Barraza asked Sarait for the FBI undercover agent's email address and began soliciting her. On February 24, Sarait and the undercover agent met with Barraza, who detailed the failed transfer order. Barraza stated that he was trying to find other ways to remove the current judge in Rivas's case, but he would need more money. Three days later, Sarait met Barraza at the courthouse and paid him an additional $3,800.

The FBI interviewed Barraza in March 2009, and he denied speaking with Rivas's family after becoming a judge. He was arrested on April 2 and indicted on August 12, charged with two counts of wire fraud and the deprivation of honest services, one count of mail fraud, and one count of making a false statement. In February 2010, a jury found Barraza guilty of two counts of wire

No. 10-50450

fraud and honest services fraud and one count of making a false statement. Barraza was sentenced to an above-guidelines sentence of 60 months imprisonment followed by three years of supervised release.

## II.

Barraza's first three challenges were raised before the district court in a motion for new trial. Barraza contends that the district court erred in denying his motion, in which he had asserted a juror made inappropriate remarks during deliberations, the government withheld impeachment evidence, and extraneous prejudicial testimony was introduced by a government witness. We review a district court's denial of a motion for new trial for abuse of discretion.[1]

## A.

The morning of the second day of jury deliberations, the court security officer informed the court that Juror 3 expressed a concern to him regarding inappropriate remarks made by Juror 1. The court interviewed Juror 3 on the record who said that Juror 1 was "all for" a guilty verdict and told the other jurors that men with power always make sexual advances. Juror 1 also allegedly relayed an experience she had at her place of employment, where she was sexually harassed. These comments were very troubling to Juror 3, but the court told her to return to deliberations and continue. Following a discussion with counsel, the court decided to excuse Juror 1, bring in an alternate, and instruct the jurors to restart deliberations from the beginning. However, before this decision could be acted upon, the jury reached a verdict. Defense counsel moved for a mistrial, which was denied.

Under *Federal Rules of Evidence* Rule 606(b), if Juror 1's sexual harassment stories were "extraneous prejudicial information [that] was improperly brought to the jury's attention," or an "outside influence [that] was

---

[1] *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001).

No. 10-50450

improperly brought to bear upon any juror," the jurors could testify during an inquiry into the verdict.   If, however, the statements were "emotions [] influencing the juror" or a part of "the juror's mental processes" then the jurors could not testify about their deliberations.

Here, the juror's statements fall into the latter category.   As we have previously stated, "We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies."[2] Juror 1's statements were inappropriate, but they are not admissible to upset the verdict. We reached a similar conclusion in *United States v. Duzac*,[3] where we noted:

> there is no evidence that any external influence was brought to bear on members of the jury.  The prejudice complained of is alleged to be the product of personal experiences unrelated to this litigation. The proper time to discover such prejudices was when the jury is being selected . . . .  Although the jury is obligated to decide the case solely on the evidence, its verdict may not be disturbed if it is later learned that personal prejudices were not put aside during deliberations.[4]

Both here and in *Duzac*, the juror communicated a generalized prejudice, but none of the statements related specifically to the defendant or the situation at trial.[5]  Rule 606(b) would bar any testimony on the jury deliberations, and we affirm the district court's denial of the motion for new trial.

## B.

Second, Barraza argues that the government withheld impeachment evidence in violation of *Brady v. Maryland*.[6] When a defendant seeks a new trial

---

[2] *United States v. McKinney*, 429 F.2d 1019, 1022–23 (5th Cir. 1970).

[3] 622 F.2d 911 (5th Cir. 1980).

[4] *Id.* at 913.

[5] *See United States v. Bennally*, 546 F.3d 1230 (10th Cir. 2008).

[6] 373 U.S. 83 (1963).

on the basis of withheld information, he must show that: "(1) the prosecution did not disclose the evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material."[7]  Favorable evidence is that which is exculpatory or impeaching.[8]  Evidence is material if there is a reasonable probability that the result of the proceeding would have differed had the prosecution disclosed the evidence.[9]

Barraza first contends that Sarait changed her testimony, producing relevant impeachment material.  During her original FBI interview, Sarait did not say that Barraza had agreed to help Rivas in his capacity as a judge.  Rather, Sarait simply said he had agreed to help Rivas, conceivably as her former attorney.  At trial, however, Sarait asserted that Barraza had promised to help Rivas using his position as a judge.  The government urges that Sarait's testimony did not change, but rather she elaborated at trial on the ways Barraza said he would help.  The trial court found that if the government knew Sarait had made inconsistent statements, those statements would qualify as impeachment information possibly favorable to Barraza.  However, even if Sarait's testimony is considered impeachment evidence, it did not prejudice Barraza.  We have previously held that evidence turned over to the defense during trial has not been "suppressed" within the meaning of *Brady*, so long as "the evidence is received in time for its effective use at trial."[10]  Barraza cross-examined both Sarait and the FBI agent who interviewed her regarding this alleged change in testimony, and counsel was able to adequately impeach Sarait

---

[7] *United States v. Davis*, 609 F.3d 663, 696 (5th Cir. 2010) (internal quotation marks omitted).

[8] *Banks v. Dretke*, 540 U.S. 668 (2004).

[9] *Davis*, 609 F.3d at 696.

[10] *Powell v. Quarterman*, 536 F.3d 325, 335 (5th Cir. 2008).

No. 10-50450

using the FBI's witness report. Prior knowledge of the perceived inconsistency would not have affected Barraza's trial strategy; thus, he was not prejudiced by any withholding of information.

Likewise, Barraza was not prejudiced by the government's failure to disclose its search of Barraza's bailiff's computer. The government's search of this computer found no incriminating information and no exculpatory information because it yielded no information at all. The jury heard testimony that the computer was seized and searched and that nothing was found on it. Barraza's knowledge of this search prior to trial could not have altered the outcome of the trial. The district court did not err in finding no *Brady* violations.

C.

Barraza's final challenge to the district court's denial of his motion for new trial involves extraneous information stated by a government witness. During direct examination, Judge Angie Juarez Barill testified that Barraza had once approached her to sign an order so that one of his clients, who had committed aggravated sexual assault of a child, could be released from jail. Barraza's attorney immediately objected, and the district court sustained the objection. The court then gave the jury a curative instruction, informing the jurors to disregard the testimony.

A court does not abuse its discretion in denying a motion for new trial unless "there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict, in light of the entire record."[11] Moreover, "a prejudicial remark may be rendered harmless by curative instructions to the jury."[12] Here, the district court concluded that the extraneous comment could be cured by a jury instruction. We "give[] great weight to the

---

[11] *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998).

[12] *United States v. Millsaps*, 157 F.3d 989, 993 (5th Cir. 1998).

No. 10-50450

trial judges' assessment of the prejudicial effect" of remarks,[13] and we find no evidence here to indicate that the district court abused its discretion in refusing to order a new trial based on this single remark.

### III.

Barraza next urges that the jury may have convicted him based on a "failure-to-disclose" theory of honest services liability that the Supreme Court declared unconstitutional in *Skilling v. United States*, decided after the trial.[14] The district court instructed the jury that it could find Barraza guilty of wire fraud if he had either (1) defrauded the state of the intangible right of honest services or (2) obtained money by fraud. In Count One, the jury found both types of fraud, but in Count Two, the jury only found honest services fraud. Barraza's indictment stated that he committed honest services fraud in two ways: (1) by "fail[ing] to disclose to his constituency and to the State of Texas that he received money," and (2) by accepting bribes. However, under *Skilling*, honest services fraud only consists of bribery and kickbacks, not the failure to disclose receipt of money.[15]  Therefore, the first portion of the indictment was an improper grounds for conviction. Barraza challenges his conviction on an alternative-theory error—the jury was instructed on alternative theories of guilt, rendered a general verdict, and could have relied on an invalid theory in returning the guilty verdict.[16]  The Government concedes error, but the question remains whether the error was harmless.

The parties dispute the appropriate standard of review, with the government urging plain error because Barraza did not challenge the honest

---

[13] *Id.*

[14] 130 S. Ct. 2896 (2010).

[15] *Id.* at 2931.

[16] *See United States v. Skilling*, 638 F.3d 480 (5th Cir. 2011).

services statute as void for vagueness in his motion for new trial, nor did he object to the jury instructions. However, Barraza's counsel filed a motion for continuance on the ground that the *Skilling* oral argument was scheduled to occur one month after the trial. Barraza sought to postpone the trial until after the opinion in *Skilling* was handed down, noting that the constitutionality of the statute was being challenged. The district court denied the motion, finding that the outcome of the Supreme Court case would be irrelevant or could be addressed through jury instructions. In support of the plain error standard, the government cites a similar Third Circuit case, which applied this standard, noting, however, "one could view [the plain error] application here as somewhat harsh, given the defendant's objection to the breadth of the honest services charge, and a Supreme Court opinion that was not easy to predict."[17] Given that Barraza's counsel not only broadly challenged the honest services charge but also raised questions about *Skilling*'s effect on the statute, plain error may be too harsh in this case.

We need not decide the standard of review, however, because the error is harmless regardless. An error is harmless if this court "after a thorough examination of the record is able to conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error."[18] The error may also be harmless "if the jury, in convicting on an invalid theory of guilt, necessarily found facts establishing guilt on a valid theory."[19]

Barraza contends that his failure to disclose fee-splitting with his former partner while he was on the state bench would deprive his constituents of an

---

[17] *United States v. Riley*, 621 F.3d 312, 322 n.12 (3d Cir. 2010) (citation omitted).

[18] *United States v. Skilling*, 638 F.3d 480, 482 (5th Cir. 2011) (internal quotation marks omitted).

[19] *Id.*

intangible honest service without also being bribery. However, a review of the record suggests this is not the reason the jury found him guilty of Count Two. The government's opening statement never mentioned the fee-splitting arrangement and likewise the closing argument focused on Barraza's bribery, not fee-splitting. Moreover, the witness testimony centered on Barraza's attempts to obtain money and sexual favors in exchange for his assistance in his capacity as a judge. Based on the record, we are able to conclude beyond a reasonable doubt that the verdict would have been the same absent any error in the jury instructions and the indictment.

## IV.

Barraza also challenges the sufficiency of the evidence in Count One, urging that the email referenced cannot sustain a wire fraud conviction. Specifically, Barraza asserts that the email related only to his efforts to obtain sex, not money. In reviewing the sufficiency of the evidence, we "consider the evidence in the light most favorable to the verdict, drawing all reasonable inferences in favor of the verdict."[20]

The text of the email forming the basis for Count One was written to the undercover agent, Rita, and read: "Good afternoon, Rita, how are we doing? Sarait told me that you are still interested. How are you doing on time?" Barraza concedes that this email relates to his attempts to obtain sex from Rita, but he argues that the email is not in furtherance of a scheme to obtain money.

The wire fraud statute requires the defendant to have devised a scheme "for obtaining money or property" by false pretenses and use an interstate wire to transmit a signal or writing.[21] Here, Barraza's scheme was to obtain money and sex by promising Rivas's family he would favorably handle her criminal

---

[20] *United States v. Cathey*, 259 F.3d 365, 368 (5th Cir. 2001).

[21] 18 U.S.C. § 1343.

No. 10-50450

charges. The wire "need not be an essential element of the scheme"; rather, "[i]t is sufficient for the [wire] to be incident to an essential part of the scheme or a step in [the] plot."[22]    The underlying question is "whether the mailings themselves somehow contributed to the successful continuation of the scheme—and, if so, whether they were so intended by [the defendant]."[23]

Barraza intended his email to contribute to his overall scheme of acquiring money and sex. Barraza understood Rita to be part of a package—of money and sex—that Rivas's family was providing to Barraza in exchange for his assistance. Rivas's sister introduced Rita to Barraza and also provided Rita's email address. Barraza himself defined the scheme: to use his position as a state judge to obtain money and sex. That only one of these goals, obtaining money, is punishable under the wire fraud statute does not afford him the opportunity to bifurcate the goals of the scheme he created.

Moreover, even if Barraza's email to Rita was not incident to an essential element of his scheme, the evidence is more than sufficient to sustain Barraza's Count One conviction under the honest services fraud theory. The wire fraud statute encompasses "a scheme or artifice to deprive another of the intangible right of honest services,"[24] and the jury found Barraza guilty of this offense in Count One. Although *Skilling* limited the reach of honest services fraud to bribes and kickbacks,[25] we have previously held that furnishing sexual services provides a "thing of value" sufficient to constitute bribery.[26] Here, Barraza

---

[22] *Schmuck v. United States*, 489 U.S. 705, 710–11 (1989) (citation and internal quotation marks omitted) (third alteration in original).

[23] *United States v. Strong*, 371 F.3d 225, 230 (5th Cir. 2004).

[24] 18 U.S.C. § 1346.

[25] *Skilling*, 130 S. Ct. at 2931.

[26] *United States v. Tunnell*, 667 F.2d 1182, 1185–86 (5th Cir. 1982) (finding that the services of a prostitute were, under Texas law, an "economic gain" bestowed upon the recipient

No. 10-50450

received a bribe of sexual favors in return for his help with Rivas's case. The email cited in Count One relates to his scheme to accept sexual bribes, depriving Texans of honest judicial proceedings. Barraza's sufficiency of the evidence challenge fails.

## V.

Barraza raises three challenges related to his sentencing: (1) the district court erred in applying a specific offense characteristic based on Barraza's status as a public official; (2) the district court erred in increasing Barraza's offense level based on a second bribe that was not part of the charged criminal conduct; and (3) the district court increased Barraza's offense level based on an improper calculation of the loss amount. We address each of these arguments in turn.

## A.

Pursuant to U.S.S.G. § 2C1.1(a), Barraza's base offense level was set at 14 because he was a "public official." In addition, the Guidelines provide a specific offense characteristic requiring a four-level increase for offenses involving "an elected public official or any public official in a high-level decision-making or sensitive position."[27] Barraza contends that applying both of these provisions double-counts his status as an elected public official. We review the district court's interpretation and application of the Sentencing Guidelines de novo.[28]

---

public official sufficient to sustain a bribery conviction); *see also United States v. Marmolejo*, 89 F.3d 1185, 1191–92 (5th Cir. 1996) (interpreting 18 U.S.C. § 666(a)(1)(B) and finding that the term "anything of value" is broad in scope, not restricted to money, goods, or services); *id.* (citing the language "anything in value" found in other criminal statutes and noting it often includes sex); *McDonald v. State*, 329 So. 2d 583, 587–88 (Ala. 1975) (holding that sexual intercourse or the promise of sexual intercourse is a "thing of value" under the state bribery statute).

[27] U.S.S.G. § 2C1.1(b)(3).

[28] *United States v. Villanueva*, 408 F.3d 193, 202 (5th Cir. 2005).

No. 10-50450

We have previously noted that "[d]ouble counting is prohibited only if the particular guidelines at issue specifically forbid it."[29]   Here, the Guidelines directly contemplate this form of "double-counting."   We interpret Barraza's argument to be that the Guidelines intended the specific offense characteristic to apply to those who *bribed* high-level officials and not to those who *were* high-level officials, but that double standard is not supported by the text.   The Guidelines do not limit the application of this specific offense characteristic.   The commentary explains that the four-level enhancement should be applied "if the payment was for the purpose of influencing an official act by certain officials."[30] Here, the payment Barraza solicited was for the purpose of influencing the way he handled a criminal case in his capacity as an elected state judge.   The district court properly applied the specific offense characteristic.

B.

U.S.S.G. § 2C1.1(b)(1)   requires a two-level increase "[i]f the offense involved more than one bribe."   In applying this increase, the district court cited a second bribe Barraza received from a former client, although Barraza was not charged or convicted for his involvement in this second bribe.   The Guidelines define "offense" to mean "the offense of conviction and all relevant conduct under § 1B1.3" unless otherwise indicated.[31] Section 1B1.3 defines relevant conduct as "all acts and omissions committed, aided, abetted . . . or willfully caused by the defendant, . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection

---

[29] *United States v. Hawkins*, 69 F.3d 11, 14 (5th Cir. 1995).

[30] U.S.S.G. § 1B1.1 cmt. background.

[31] *Id.* at n.1(H).

or responsibility for that offense."[32] In other words, separate acts or conduct that did not occur during the commission of the presently charged offense may not be relevant conduct. Thus, § 1B1.3(a)(1) alone does not automatically provide a basis for including the second bribery charge in the sentencing calculation.

However, the second bribery charge may be included under § 1B1.3(a)(2). There, the Guidelines instruct that for offenses that require grouping, as multiple counts of bribery would, relevant conduct includes acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." Common scheme or plan is defined as offenses that "must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi."[33] Offenses are of the same course of conduct if "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses."[34] The Guidelines instruct that factors used to determine whether actions are sufficiently connected include the degree of similarity, the regularity (repetitions) of the offenses, and the time interval between offenses. "When one of the above factors is absent, a stronger presence of at least one of the other factors is required."[35] Here, the two briberies involved similar modus operandi, a common purpose, and occurred in close temporal proximity. These facts suggest that Barraza's briberies were part of a common scheme or of the same course of conduct. Thus,

---

[32] U.S.S.G. § 1B1.3(a)(1); *see also United States v. Woods*, 907 F.2d 1540, 1543 (5th Cir. 1990) (noting that the Guidelines instruct the sentencing judge to consider "all acts or omissions . . . for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction").

[33] U.S.S.G. § 1B1.3 cmt. n.9(A).

[34] *Id.* at n.9(B).

[35] *Id.*

No. 10-50450

the second uncharged bribe may be used to increase the offense level for Barraza's bribery conviction.

## C.

The district court also applied a specific offense characteristic enhancement based on § 2C1.1(b)(2), which provides for an offense level increase if the value of the payment or benefit exceeded $5,000. Barraza agrees that he received $5,100 from Rivas's family, but he urges that $2,000 was paid to his law partner for legitimate attorney's fees. Because Rivas received value for that money in the form of valid legal representation, Barraza argues this amount should not be counted in the sentencing enhancement.

The Guidelines provide that the bribery loss amount should be reduced by the fair market value of services rendered by the defendant to the victim "before the offense was detected," whether detected by the victim or law enforcement. The services of Barraza's law partner were legitimately provided in February and March 2009. However, law enforcement officials began investigating Barraza in December 2008 and approached Rivas's friend for assistance in January 2009. Any monies rendered for legitimate legal services cannot be subtracted from the loss value because Barraza and his colleague provided these services after the offense was detected.

## VI.

None of Barraza's several challenges require a new trial, reversal of his conviction, or resentencing. AFFIRMED.