# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00110-CR

---

**John White, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 22ND DISTRICT COURT OF HAYS COUNTY**
**NO. CR-14-0943, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

John White was charged with murder in an indictment alleging three alternate methods: (1) intentionally or knowingly causing Nicolas Campos's death; (2) intentionally causing serious bodily injury and committing an act clearly dangerous to human life that caused Campos's death; and (3) felony murder. *See* Tex. Penal Code § 19.02(b)(1), (2), (3) (defining offense of murder). A jury convicted White of murder, and the district court assessed punishment at thirty years' imprisonment. *See id*. § 19.02(b). White raises four issues on appeal contending that there was error in the jury charge and a fifth issue contending that the judgment of conviction should be reformed to reflect the proper statute for the offense.

We will modify the district court's judgment to correctly reflect the statute for the offense and affirm the judgment as modified.

# BACKGROUND

White was charged with murdering Campos by stabbing or striking him to death during an early-morning attack in a residential area. For about a month and a half before the attack, White had been living at his co-worker Mauricio Rodriguez-Frias's house along with White's half-brother, Edward Rios; and Rodriguez-Frias's two stepdaughters, Sabrina Sepulveda[1] and Stephanie Sepulveda.[2]

In the hours before the attack, White and Rodriguez-Frias went to a bar where they drank and did cocaine in the bathroom. While at the bar, Rodriguez-Frias saw Campos, a man that he knew but that White did not. Campos asked Rodriguez-Frias for a ride home. On the way, Campos suggested that they all continue drinking beers at Rodriguez-Frias's house instead. During the car ride, Rodriguez-Frias became upset when remembering that Campos's brothers used to beat him up and spit in his face when they lived in Mexico.

White, Campos, and Rodriguez-Frias arrived at Rodriguez-Frias's house about midnight, where they continued drinking and talking for about an hour. Rodriguez-Frias and Campos began arguing and then physically fighting. Rios, who was inside the house, testified that Sabrina called him to help break up the fight. Rios saw White kick Campos in the head and saw Rodriguez-Frias hitting Campos. White denied fighting with Campos "at the beginning," but he recalled that Rodriguez-Frias pulled out a knife sometime during the fight. Sabrina stated that she and Rios were able to separate White and Rodriguez-Frias from Campos.

Campos ran from the house and hopped some fences. White and Rodriguez-Frias pursued him and resumed fighting at a location down the street. White and Rodriguez-Frias

---

[1] Sabrina Sepulveda was also John White's ex-girlfriend.

[2] Stephanie Sepulveda was also Edward Rios's girlfriend.

returned to the house three times and left again to fight with Campos, but Campos never returned. The last time that White and Rodriguez-Frias returned to the house, they had blood on their clothing. Rodriguez-Frias packed a suitcase and left.

Later that morning, a child riding a school bus saw a body in a ditch and reported the sighting to his mother. The mother went to the area that her son described, discovered the body of a deceased male, and called police. Police identified the deceased as Campos and interviewed White.

White gave police detectives several videotaped statements, admitted into evidence, with varying versions of his involvement in Campos's attack. When asked what he was angry about, White said that Campos "was talking shit about my brother's [Rios's] girlfriend [Stephanie]." According to White, Campos told him, "your sister-in-law is fine" and "I wanna rape her." White said that after Campos hopped the fence, he and Rodriguez-Frias went looking for him, with White on foot and Rodriguez-Frias in a car. Once they found him, they "beat the guy up a little bit, left him right there, then [they] came back to the house." After Rodriguez-Frias heard dogs barking, he told White, "I think he's still there," and they got in a car to look for Campos. White said that while they were in the car, Rodriguez-Frias told him that when he found Campos, he was going to kill him. They did not find him while driving, so they went back to the house, left the car, and went looking for him on foot. Rodriguez-Frias walked through backyards, and White walked in the area of the street.

White said they found Campos "in the ditch where we had left him before." He then explained that they had left him "on the road and he probably like went down to the ditch so we couldn't find him." When Campos saw them, he got up and started to run, but Rodriguez-Frias tripped him and "we were beating him up." White saw Campos "just laying there" in the

3

ditch "having problems breathing."  Then White told Rodriguez-Frias, "You know what, I'm done, and I wanna go back."  White began walking away with Rodriguez-Frias following him.

Then Rodriguez-Frias mumbled something to White and returned to Campos.  White said that when he looked back he saw Rodriguez-Frias with Campos, about eight to ten feet away, and Rodriguez-Frias was moving his arms and White was "pretty sure that he [Rodriguez-Frias] was stabbing him [Campos]."  White said that he was "pretty sure" that Campos was unconscious.  White walked home and changed his clothes, which he said had blood on them but not "excessive blood, I just had like a couple of drops."  White told Sabrina, "I think Mauricio killed him," but White did not call law enforcement or seek assistance for Campos.

White later told detectives what he had been planning when he and Rodriguez-Frias went looking for Campos:

| Detective: | When y'all went to look for him in the car, what was the plan then? |
|---|---|
| White: | Uh to find him, just beat him up, and maybe just . . . |
| Detective: | What? |
| White: | . . . kill him. |
| Detective: | The plan was to go kill him? |
| White: | Yeah. |
| . . . . | |
| Detective: | You guys went down there to kill the guy, right? |
| White: | Yeah. |

4

Detective: I mean that was the whole point. How did you think you were gonna do it? What was your plan? I mean, you're mad, you gotta have some plan you're gonna do—

White: I was just gonna straight up beat him up, beat him up, until, you know—

Detective: 'Til he died?

White: Yeah.

A medical examiner determined that Campos sustained multiple stab wounds, including one to his heart. The medical examiner ruled Campos's death a homicide caused by "stab wounds with blunt force injuries as contributory factors." Blood stains on White's shorts and shoes underwent forensic testing. A DNA analyst testified that the DNA profile from a stain on the front of the shorts was consistent with the DNA profile of Campos. Another forensic scientist testified that she obtained a DNA profile from the shoe and that Rodriguez-Frias and White were excluded as contributors of that single-source DNA profile, but Campos could not be excluded as the contributor.

After the parties rested their cases, the jury received a charge addressing the three legal theories from White's indictment by which he could be found guilty—acting alone or as a party—of Campos's murder. *See* Tex. Penal Code § 19.02(b)(1)-(3). White made no objections to the court's charge. The jury returned a general verdict finding White guilty of murder, and he was sentenced to thirty years' imprisonment. This appeal followed.

**DISCUSSION**

**Charge errors**

In his first four appellate issues, White complains about errors in the jury charge. We review alleged jury-charge error in two steps: first, we determine whether error exists; and if so, we evaluate whether any harm resulting from such error requires reversal. *See Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

The trial court must deliver to the jury a written charge distinctly setting forth the law applicable to the case. Tex. Code Crim. Proc. art. 36.14. Jury instructions must apply the law to the facts adduced at trial and conform to allegations in the indictment. *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012). Those instructions should be reduced to the theories that are supported by the evidence at trial. *Moulton v. State*, 395 S.W.3d 804, 810 (Tex. Crim. App. 2013).

White was charged with murder under the law of parties. The law of parties provides that "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code § 7.01(a). A person's participation as a party may be shown by events occurring before, during, and after the commission of the offense, and may be demonstrated by actions showing an understanding and common design to do the prohibited act. *Salinas v. State*, 163 S.W.3d 734, 739-40 (Tex. Crim. App. 2005); *see Briggs v. State*, No. 03-11-00275-CR, 2012 Tex. App. LEXIS 7131, at *44 (Tex. App.—Austin Aug. 24, 2012, no pet.) (mem. op., not designated for publication). Circumstantial evidence may be used to prove a

6

person's status as a party to an offense. *Beltran v. State*, 472 S.W.3d 283, 290 (Tex. Crim. App. 2015).

The jury charge in this case addressed the law of parties in a section titled "Responsibility for Conduct of Another." This section quoted the law of parties from the Penal Code and instructed the jury on two theories of party liability: "intent to promote and assist" and conspiracy. *Id*. §§ 7.01, .02(a)(2), (b). The first theory states that "[a] person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id*. § 7.02(a)(2). The second theory states that

> [i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id*. § 7.02(b). At the end of this party-liability section, the charge stated, "A defendant is guilty of an offense committed by another under the law set out here even if that other person has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or of a different type of offense, or is immune from prosecution."

### 1.      Abstract and application paragraphs of charge as to murder

White now complains about error in the abstract and application paragraphs of the charge. He contends that the abstract paragraph gave an incorrect description of what is required to be a party to murder and did not instruct the jury that a defendant must intend the victim's death and the act clearly dangerous to human life. Further, he contends that the application

7

paragraph was erroneous because it "authorized his conviction as a party to murder on a legally invalid basis" and because it did not instruct the jury that to be guilty as a party, he had to intend Campos's death and intend that Rodriguez-Frias commit an act clearly dangerous to human life.

The abstract paragraphs of a charge "serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). The application paragraph is the portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the facts and indictment allegations of a given case. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015).

Here, the abstract and application paragraphs of the jury charge addressed the three legal theories from White's indictment by which he could be found guilty—acting alone or as a party—of Campos's murder: (1) committing an intentional or knowing killing; (2) intending to cause serious bodily injury and committing an act dangerous to human life resulting in death; and (3) felony murder. *See* Tex. Penal Code § 19.02(b)(1)-(3). The charge included a definition of aggravated assault, the underlying felony alleged for felony murder. *See id*. § 22.02. The charge also defined the culpable mental states of "intentionally causing the death of an individual," "knowingly causing the death of an individual," "intentionally causing serious bodily injury," and "knowingly causing bodily injury." *See id*. § 6.03(a), (b).

The abstract paragraph of the charge addressed the elements of murder and aggravated assault:

8

**Relevant Statutes**

A person commits murder if the person—

1) intentionally or knowingly causes the death of an individual, or

2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual, or

3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

To prove that the defendant is guilty of murder as charged in the indictment, the State must prove, beyond a reasonable doubt, various elements. The elements are that—

1. a. the defendant, either acting alone or as a party, caused the death of an individual; and

   b. did this intentionally or knowingly; and

   c. used or exhibited a deadly weapon during the commission of or immediate flight from this offense; or

2. a. the defendant, either acting alone or as a party, committed an act clearly dangerous to human life; and

   b. this act caused the death of an individual; and

   c. had the intent to cause serious bodily injury; and

   d. used or exhibited a deadly weapon during the commission of or immediate flight from this offense; or

3. a. the defendant, either acting alone or as a party, committed or attempted to commit a felony, other than manslaughter; and

   b. in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt of that felony, committed or attempted to commit an act clearly dangerous to human life; and

9

c. the act clearly dangerous to human life caused the death of an individual; and

d. used or exhibited a deadly weapon during the commission of or immediate flight from this offense.

A person commits aggravated assault if the person—

1) intentionally or knowingly causes bodily injury to another and uses or exhibits a deadly weapon during the commission of the assault or

2) intentionally or knowingly causes serious bodily injury to another.

To prove that the defendant is guilty of aggravated assault, the State must prove, beyond a reasonable doubt, various elements. The elements are that—

1. a. the defendant, either acting alone or as a party, caused bodily injury to another; and

   b. i. acted with intent to cause bodily injury or with knowledge that he would cause bodily injury;

      ii. used or exhibited a deadly weapon during the commission of or immediate flight from this offense; or

2. a. the defendant, either acting alone or as a party, caused serious bodily injury to another; and

   b. did this intentionally or knowingly.

Aggravated assault is a felony.

The application paragraph of the charge stated:

**Application of Law to Facts**

You must determine whether the State has proved, beyond a reasonable doubt, various elements. The elements are that the defendant, either acting alone or as a party to the offense as described above, in Hays County, Texas, on or about September 29, 2014,

10

1.  a.  caused the death of Nicolas Campos by stabbing him with a knife or sharp object and

    b.  caused the death of Nicolas Campos either intentionally or knowingly; and

    c.  used or exhibited a deadly weapon during the commission of or immediate flight from this offense or

2.  a.  committed an act clearly dangerous to human life by stabbing Nicolas Campos with a knife or sharp object and

    b.  caused the death of Nicolas Campos; and

    c.  intended to cause serious bodily injury to Nicolas Campos; and

    d.  used or exhibited a deadly weapon during the commission of or immediate flight from this offense; or

3.  a.  committed or attempted to commit aggravated assault; and

    b.  in the course of and in furtherance of the commission or attempted commission, or in immediate flight from the commission or attempted commission of aggravated assault, committed or attempted to commit an act clearly dangerous to human life by stabbing Nicolas Campos with a knife or sharp object; and

    c.  caused the death of Nicolas Campos; and

    d.  used or exhibited a deadly weapon during the commission of or immediate flight from this offense.

You are instructed that aggravated assault is a felony other than manslaughter.

Before you may convict the defendant of murder, each of you must agree that the State has proved, beyond a reasonable doubt, all of the elements under 1., 2., or 3., listed above. All of you need not agree on which theory of murder applies, so long as each of you finds that all of the elements of one or more of the theories listed above have been proven beyond a reasonable doubt.

If you all agree the State has failed to prove, beyond a reasonable doubt, either 1., 2., or 3., listed above, you must find the defendant "not guilty" of Murder and so indicate on the Verdict Form.

11

If you all agree the State has proved, beyond a reasonable doubt, all of the elements under 1., 2., or 3., listed above, you must find the defendant "guilty" of Murder and so indicate on the Verdict Form.

Relying on *Nava v. State*, 415 S.W.3d 289, 299-300 (Tex. Crim. App. 2013), White complains that the abstract and application paragraphs of the charge allowed the jury to convict him as a party to murder without finding beyond a reasonable doubt that he intended Campos's death and intended that Rodriguez-Frias stab Campos. White states that intending to assist another person in the offense of murder means intending both the death of the victim and the unreasonably dangerous act, regardless of what is required of the principal actor. *See id*. ("Combining the language of § 7.02(a)(2) with the felony-murder statute, then, requires an intent to promote or assist, not only the commission of the underlying felony and the unreasonably dangerous act, but also the result of the offense of felony murder—the death of an individual."). We agree that the charge contained this error.

### 2.    Aggravated-assault instruction for felony murder

White also contends that the charge was erroneous because the application paragraph for felony murder allowed the jury to consider whether a deadly weapon was used or exhibited in "immediate flight" from the assault. Thus, the jury was instructed that it could convict White if he, acting as a party, caused bodily injury to Campos; acted with intent to cause bodily injury; and Rodriguez-Frias used or exhibited a deadly weapon—during Campos's assault or—during White's immediate flight from the offense. The State acknowledges that the "immediate flight" phrase was erroneously included. We agree that the charge contained this error.

12

### 3. Conspiracy instruction

White further contends that the charge was erroneous because it provided the definition of conspiracy under section 7.02(b) when setting forth the law of parties, but it did not authorize the jury to convict on that basis by incorporating that theory into the application paragraph of the charge.

When an unobjected-to charge includes abstract instructions on the law of parties and the application paragraph incorporates those instructions by reference—authorizing the defendant's conviction based on a finding that he acted "alone or as a party"—the jury is authorized to convict on the parties theory. *See Greene v. State*, 240 S.W.3d 7, 15 (Tex. App.—Austin 2007, pet. ref'd); *see also Marvis v. State*, 36 S.W.3d 878, 880 (Tex. Crim. App. 2001) ("[T]he use of the phrase 'acting together' in the application portion of the charge is a reference to the abstract portion, which equates 'acting together' with 'party'"); *Chatman v. State*, 846 S.W.2d 329, 332 (Tex. Crim. App. 1993) (concluding that "acting alone or as a party, as that term has been defined," generally applied law of parties to facts in application paragraph).

Here, the application paragraph did not expressly apply the abstract law of parties to the facts of the case; rather, it incorporated the abstract paragraph on party liability by asking the jury to consider White's conduct "either acting alone or as a party to the offense as described above[.]" The party-liability paragraph specified that "a defendant is guilty of an offense committed by another under the law set out here" immediately after the instructions on the "intent to promote and assist" and "conspiracy" theories of party liability. *See* Tex. Penal Code § 7.02(a)(2), (b). Thus, the application paragraph authorized White's conviction for the murder of Campos by White's own conduct and by Rodriguez-Frias's conduct for which White was criminally responsible as a party under either theory of party liability. *See Greene*, 240 S.W.3d

13

at 15 (rejecting defendant's contention that charge was inadequate to authorize his conviction without directly applying law on criminal responsibility for conduct of co-conspirator to facts of case in application paragraph). We conclude that there was no error in this portion of the charge.

### 4. Harm analysis

Having found error in the jury charge, we must consider whether White was egregiously harmed by such error. White acknowledges that he failed to object to any error in the jury charge at trial.

When a defendant fails to object to the district court's charge, any charge error will not result in reversal of the conviction without a showing of egregious harm that deprived the defendant of a fair and impartial trial. *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019). Such harm must be actual and not merely theoretical. *Id*. Charge error is considered egregiously harmful when it "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Arteaga*, 521 S.W.3d at 338. "Egregious harm is a 'high and difficult standard' to meet, and such a determination 'must be borne out by the trial record.'" *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). Overwhelming evidence of guilt plays a determinative role in resolving the issue and may be considered when assessing jury-charge error. *Sanchez*, 376 S.W.3d at 775. "In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the closing arguments of the parties, and any other relevant information in the record." *Arteaga*, 521 S.W.3d at 338.

Initially, we note that unlike the jury charge in *Nava*, which addressed the separate offenses of felony murder, theft, and attempted theft, this jury charge addressed the single offense of murder as alleged under three alternative legal theories. *Cf.* 415 S.W.3d at 294. When a jury charge alleges alternative theories, harm must be measured at least in part against the likelihood that the jury's verdict was actually based on an alternative available theory of culpability that was not affected by erroneous portions of the charge. *Sanchez*, 376 S.W.3d at 775 (considering charge that presented jury with options of finding murder under sections 19.02(b)(1) or 19.02(b)(2) of Penal Code).

Thus, "[w]hen a jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict stands 'if the evidence is sufficient to support a finding under any of the theories submitted.'" *Id*. (quoting *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991)); *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) ("Since we have already found the evidence sufficient to support a conviction under Section 19.02(a)(1) murder, we will not review the sufficiency of the evidence to show a Section 19.02(a)(3) murder"); *McDow v. State*, No. 05-17-01201-CR, 2019 Tex. App. LEXIS 5296, at *22 (Tex. App.—Dallas June 25, 2019, no pet.) (mem. op., not designated for publication) (concluding that because evidence was sufficient to support defendant's murder convictions under sections 19.02(b)(1) and 19.02(b)(2), any error in jury charge as to felony-murder allegations under section 19.02(b)(3) did not cause defendant egregious harm); *Fuentes-Sanchez v. State*, No. 03-12-00281-CR, 2014 Tex. App. LEXIS 4222, at *27 (Tex. App.—Austin Apr. 17, 2014, no pet.) (mem. op., not designated for publication) (noting that charge permitted jury to convict defendant "either acting alone or as a party to the aggravated-sexual-assault offenses under at least one theory that was overwhelmingly supported by the evidence"); *accord*

15

*Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) ("An instructional error arising in the context of multiple theories of guilt no more vitiates all the jury's findings than does omission or misstatement of an element of the offense when only one theory is submitted."); *United States v. Barraza*, 655 F.3d 375, 382 (5th Cir. 2011) (noting that error may be harmless if jury, convicting on invalid theory of guilt, necessarily found facts establishing guilt on valid theory).

Here, the jury had strong evidence to support White's murder conviction under section 19.02(b)(1) of the Penal Code, including evidence that:

- White saw that Rodriguez-Frias had a knife when the fight with Campos began outside the house;

- White knew Rodriguez-Frias wanted to kill Campos;

- White was angry at Campos;

- White joined Rodriguez-Frias in chasing and beating Campos;

- White helped Rodriguez-Frias look for Campos and planned to kill him;

- White saw Campos having difficulty breathing and possibly unconscious but left him there in the ditch;

- White intended to beat up Campos until he died; and

- Campos's death was caused by "stab wounds with blunt force injuries as contributory factors."

### a. Entirety of the charge

As to the entirety of the charge, the jury was instructed that White could be convicted of murdering Campos based on White's own conduct or as a party. *See* Tex. Penal Code §§ 7.01, .02. We have noted that the charge contained error because the abstract and application paragraphs of the charge allowed White's murder conviction as a party without

16

requiring a finding beyond a reasonable doubt that White intended Campos's death and that White intended for Rodriguez-Frias to stab Campos, even as to the offense of felony murder. *See Nava*, 415 S.W.3d at 299-300; *cf. id.* at 309 (Cochran, J., concurring) ("There is no such thing as an intent to commit felony murder.").

We have also noted that the application paragraph of the charge contained error by instructing the jury that it could convict White of felony murder if he, acting as a party, caused bodily injury to another; acted with intent to cause bodily injury; and that Rodriguez-Frias used or exhibited a deadly weapon during White's immediate flight from the offense. But as discussed further in our review of the "state of the evidence" factor, White was not egregiously harmed by this error as to aggravated assault for felony murder under section 19.02(b)(3) because there was sufficient evidence supporting White's conviction of murder under section 19.02(b)(1). *See McDow*, 2019 Tex. App. LEXIS 5296, at *22 (concluding that because evidence was sufficient to support defendant's murder convictions under sections 19.02(b)(1) and 19.02(b)(2), any error in jury charge as to felony-murder allegations under section 19.02(b)(3) did not cause defendant egregious harm).

Finally, we have noted that contrary to White's contention, the charge did not fail to incorporate the conspiracy theory of party liability—in addition to the "intent to promote and assist" theory—in the application paragraph of the charge. Because the charge referenced White's conduct "either acting alone or as a party to the offense as described above" and because the party-liability paragraph in turn, specified that "a defendant is guilty of an offense committed by another under the law set out here," the application paragraph in this charge authorized White's conviction based on his own conduct and based on Rodriguez-Frias's conduct for which White was criminally responsible under either theory of party liability. *See Greene*, 240 S.W.3d

17

at 15.  Thus, we conclude that the entirety of the charge weighs only slightly in favor of a finding of egregious harm.

### b.  State of the evidence

The evidence at trial against White was strong and mostly uncontested.  Campos's DNA was present in the blood on White's clothing.  White's own statements to detectives show that although White initially sought to minimize his role in Campos's death, he later acknowledged that he was angry at Campos; joined Rodriguez-Frias in beating Campos; helped Rodriguez-Frias look for Campos and planned to kill him; and intended to beat up Campos until dead.  White's half-brother, Rios, testified that he saw White kick Campos in the head during the fight outside the house.  The medical examiner determined that Campos's blunt force injuries were contributory factors to his death.  Further, the last time White saw Campos, he knew that Campos was having difficulty breathing, was likely unconscious, and was sustaining more blows from Rodriguez-Frias, but White left him there in the ditch.  White told Sabrina that he thought Campos had been killed, but he did not report his death to law enforcement, who were notified only after a neighborhood child discovered the body.

The evidence supports a finding that White was guilty of murder as a party because he intended Campos's death and his actions of physically beating Campos—combined with Rodriguez-Frias's stabbings of Campos—caused Campos's death.  *See* Tex. Penal Code § 19.02(b)(1).  Because the evidence is sufficient to support a finding that White committed murder as defined in section 19.02(b)(1) of the Penal Code, charged in his indictment, and submitted to the jury, White was not egregiously harmed by error in the charge as to the alternative theories of murder.  *See Sanchez*, 376 S.W.3d at 775; *McDow*, 2019 Tex. App.

18

LEXIS 5296, at *22. Accordingly, we conclude that the state of the evidence at trial weighs heavily against a finding of egregious harm resulting from error in the jury charge. *See Sanchez*, 376 S.W.3d at 775 (noting that presence of overwhelming evidence of guilt plays determinative role in resolving charge-error issue); *Fuentes-Sanchez*, 2014 Tex. App. LEXIS 4222, at *27 (same).

### c. Closing arguments

The State's closing argument addressed the law of parties and how it applied here. The State argued that when someone helps his knife-carrying friend to beat up a man, leaves him for dead, and returns multiple times to confirm the killing, it does not matter that only one person actually did the stabbing. The State emphasized that White aided and assisted and directed the beating of Campos; that the jury would not have to guess whether murder was something that should have been anticipated, given White's admissions; and that "it's clear that they together committed murder."

The defense did not object to the State's explanation about the law of parties or how that law, as applied to the facts, showed White was guilty of murder. The defense's closing argument omitted any reference to the law of parties and repeatedly stated that Rodriguez-Frias stabbed Campos. The defense avoided a law-of-parties discussion deliberately and at its peril. Thus, we conclude that this factor weighs against a finding of egregious harm.

### d. Other relevant information

White contends that questions from the jury during deliberations show that the alleged charge error confused them. In reference to the party-liability instructions, the jury's first note asked, "Is a 'felony' a type of 'offense'?" The jury's second note asked, "Under

19

'Application of Law to Facts' is it appropriate to apply 'as a party' to each letter under a number, separately?" The district court answered both questions by referring the jury to the charge. As to the first question, the instructions in the charge tracked the Penal Code statutes on the law of parties. *See* Tex. Penal Code § 7.02. The charge also informed the jury that the underlying felony was aggravated assault and that White was accused of committing the offense of murder.

As to the second question, the district court referred the jury to the charge again, where the jury could compare the difference in format between the application paragraphs that referenced "acting alone or as a party" only once in the preface, with the abstract paragraphs that included "acting alone or as a party" in each subsection (a). Given the other relevant information in the record as a whole, we conclude that this factor weighs only slightly in favor of a finding of egregious harm or is neutral.

After considering all the above factors, we conclude that White has not shown that any jury-charge error affected the very basis of the case, deprived him of a valuable right, or vitally affected a defensive theory, *see Arteaga*, 521 S.W.3d at 338, and further, he has not shown that any alleged charge error caused him "actual rather than theoretical harm," *see Chambers*, 580 S.W.3d at 154. In the absence of showing that error in this charge caused him egregious harm, we overrule White's first four issues.

**Correction of judgment**

In his fifth and final issue, White contends that the judgment of conviction should be modified to reflect that the statute for the offense is section "19.02(b)" of the Texas Penal Code, and not section "19.02(b)(1)" because he was charged with all three forms of murder

20

under the statute and because the jury's verdict does not reflect which of the three was the basis for his conviction.

White's judgment of conviction reflects that the "Statute for Offense" is "19.02(b)(1) Penal Code." As we have noted, White was charged with murder under subsections 19.02(b)(1), (2), and (3) of the Penal Code, and the jury returned a general verdict of guilt for the murder offense. *See* Tex. Penal Code § 19.02(b)(1)-(3). We have authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b) (authorizing court of appeals to modify trial court's judgment and affirm it as modified); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993) (concluding that rules of appellate procedure empower courts of appeals to reform judgments). Accordingly, we sustain White's fifth issue seeking modification of his December 11, 2017 judgment of conviction to delete subsection (1) in the "Statute for Offense."

## CONCLUSION

We modify White's judgment of conviction to reflect that the "Statute for Offense" is "19.02(b) Penal Code," and we affirm the judgment as modified.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Kelly and Smith

Modified and, as Modified, Affirmed

Filed: February 20, 2020

Do Not Publish

21